IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>LEE D. WEISS, FAMILY ENDOWMENT PARTNERS, LP,<br><br>    Defendants,<br><br>    And<br><br>MIP GLOBAL, INC. f/k/a MOSAIC INVESTMENT PARTNERS, INC., MOSAIC ENTERPRISES, INC., MOSAIC INVESTMENT PARTNERS, INC., WEISS CAPITAL REAL ESTATE GROUP, LLC,<br><br>    Relief Defendants,<br>and<br><br>STILLPOINT CAPITAL, LLC and its successors or assigns<br><br>    Defendant/Garnishee. | CIVIL ACTION NO. 1:15-CV-13460-IT |

**<u>JENNIFER H. HAWTHORNE'S LIMITED MOTION TO INTERVENE AND TO QUASH/MODIFY CONTINUING WRIT OF GARNISHMENT AND MEMORANDUM IN SUPPORT THEREOF</u>**

On October 26, 2018, the Court, upon application of the United States Securities and

Exchange Commission ("SEC"), issued a Post-Judgment Continuing Writ of Garnishment (the

"Writ of Garnishment") to the Defendant/Garnishee Stillpoint Capital, LLC ("Stillpoint"),

directing Stillpoint to withhold and retain property within its possession, custody or control in which Relief Defendant MIP Global, Inc. ("MIP Global") has or may obtain an interest. See Docket # 73. On April 9, 2016, MIP Global assigned and granted a security interest to Jennifer H. Hawthorne in all net proceeds, distributions and other payments from or with respect to Stillpoint. Accordingly and pursuant to Fed. R. Civ. P. 24 and 28 USC § 3205, Hawthorne hereby seeks to intervene in this action for the limited purpose of seeking to quash, or in the alternative, modify, the Writ of Garnishment and protect her priority with respect to the rights granted to her by MIP Global. As grounds for this Motion, Hawthorne states as follows:

**Factual Background**

1. Starting in 2009, the Defendant, Lee D. Weiss ("Weiss") acted as Hawthorne's investment advisor through his firm Family Endowment Partners, LP ("Family Endowment"). See Affidavit of Jennifer H.. Hawthorne filed in support of this Motion ("Hawthorne Aff."), ¶2. Weiss managed a portfolio of investments for Hawthorne, which were selected upon his advice. Id.

2. Between March 17, 2014 and August 11, 2014, on Weiss's advice, Hawthorne made three loans for investment purposes to MIP Global, totaling $2,250,000, which were included in her managed portfolio. Hawthorne Aff., ¶3. Each of the loans was the subject of a Promissory Note, and in at least two cases, a Loan Agreement. Hawthorne Aff., ¶3, Exhibit A.

3. On March 2014, on Weiss's advice, Hawthorne also purchased 200,000 shares of common stock of MIP Global Bahamas, Ltd. ("MIP Bahamas"), a company incorporated under the laws of the Commonwealth of the Bahamas, for $1,000,000. Hawthorne Aff., ¶5. These shares also were part of Hawthorne's investment portfolio managed by Weiss. Hawthorne Aff., ¶5; Exhibit B to Hawthorne Aff.

4. In March 2015, Hawthorne was informed by Weiss that he and Family Endowment had been accused of perpetrating several schemes to defraud clients, which ultimately led to the filing of this lawsuit in this matter by the SEC against the Defendants and Relief Defendants, asserting claims for violations of the Securities Act of 1933, the Securities and Exchange Act of 1934, and the Investment Advisers Act of 1940.  Hawthorne Aff., ¶6.

5. In or about March 2016, Weiss informed Hawthorne that MIP Global was unlikely to be able to continue to pay interest due under the Promissory Notes.  Hawthorne Aff., ¶7.

6. On April 9, 2016 Hawthorne entered into an Assignment and Security Agreement (the "Agreement") with Weiss, MIP Global, and two other entities wholly owned by Weiss, MIP Inc., a Delaware corporation, and Mosaic OTM, LLC, a Delaware limited liability company. Hawthorne Aff., ¶8, Exhibit C.

7. In the Agreement, Weiss and MIP Global acknowledged that they owed Hawthorne $3,250,000 pursuant to the Loan Agreements, Promissory Notes, all of which were then in default, and Weiss's agreement to rescind the MIP Bahamas Purchase Agreement. Hawthorne Aff., ¶9, Exhibit C t at 1.  Weiss, MIP Global and MIP, Inc. further agreed to reimburse Hawthorne for an amount not to exceed $2,500,000 representing fees charged and other invested funds received from Hawthorne, plus interest accruing on these amounts after March 31, 2016 at an annual rate of 6.5%, plus reasonable attorneys' fees and costs of collection, the aggregate payment, together with the $3,250,000 obligation, defined in the Agreement as the "Settlement Amount."  Hawthorne Aff., ¶9, Exhibit C at 1.

8. To secure their obligation to repay Hawthorne for the losses she incurred with regard to her investments, Weiss and the entities named in the Agreement, which he controlled,

assigned certain rights and granted certain security interests to Hawthorne.  Hawthorne Aff., ¶10.  Among the rights granted, MIP Global assigned all of its right, title and interest in any payments, distributions or other amounts due to them from Stillpoint[1] and granted to Hawthorne a security interest in all such future payments until Hawthorne receives an aggregate sum equal to the Settlement Amount.  See Hawthorne Aff., Exhibit Cat 1-3.  Moreover, Weiss agreed on behalf of MIP Global to instruct Stillpoint and any other relevant parties to pay directly to Hawthorne when otherwise due all proceeds, distributions and other payments otherwise owed to MIP Global.  Id. at 2.

9.      Over two months after the date on which the Agreement was entered into, on June 20, 2016, this Court entered Final Judgment in favor of the SEC pursuant to the consent of the Defendants and Relief Defendants in this matter.  See Docket # 54.  MIP Global was found liable to the SEC for disgorgement of $6,500,000, together with prejudgment interest thereon in the amount of $97,612.83, for a total obligation of $6,597,612.83.  Id. at 7.  The Judgment provides that the SEC "shall propose to the Court a plan to distribute" the funds collected from the Defendants to affected investors if it concludes that the funds "are sufficient for a distribution to be practicable."  Id. at 7.  It further provides that "[i]n the event the [SEC] concludes that a distribution of the Available Funds to affected investors would not be practicable and reasonable, the [SEC] shall propose to the Court that the Available Funds be transferred to the United States Treasury."  Id. at 7-8.

10.     On July 7, 2017, pursuant to the SEC's Motion for Writ of Garnishment, this Court issued a Post-Judgment Continuing Writ of Garnishment, directing Stillpoint to withhold

---

[1] MIP Global holds title to a 66.67% membership interest in Stillpoint.  Hawthorne Aff., ¶4.  Upon information and belief, MIP Global is controlled directly or indirectly by Weiss.  Hawthorne Aff., ¶4.  See also Complaint for Injunctive and Other Relief, Docket # 1, ¶ 20.

4

and retain any property in its possession, custody or control in which Weiss – not MIP Global – had an interest at the time the Writ was served or which Weiss may obtain in the future.  See Docket # 63.

11. On July 21, 2017, Stillpoint filed an Answer of Garnishee in this matter indicating that it has or anticipates having future possession, custody or control of property in which MIP Global may or will have an interest as a disassociated member of Stillpoint with an approximate value of $80,000 less expenses.  See Docket # 65.  Stillpoint further indicated that its sole remaining member will pay to MIP Global the value of its interest once confirmed by a Florida state court in an action for declaratory relief pending between Stillpoint, MIP Global and others.  Id.  Stillpoint did not expressly state in its Answer whether it had any property in its possession, custody or control belonging to Weiss.  See id.

12. The Court did not enter a disposition order pursuant to 28 U.S.C. 3205(c)(7) directing Stillpoint with regard to the disposition of any property.

13. Hawthorne recently learned that MIP Global and Stillpoint had entered into discussions regarding a potential settlement of their dispute regarding MIP Global's interest in Stillpoint.  Hawthorne Aff., ¶15.  Hawthorne also learned that Stillpoint and MIP Global have discussed a potential resolution whereby MIP Global's interest in Stillpoint would be appraised in accordance with the provisions of the Stillpoint Operating Agreement and Stillpoint or a related party would agree to pay a purchase price to MIP Global over a five year period.  Id.

14. On October 22, 2018, the SEC filed with this Court an Application for Post Judgment Continuing Writ of Garnishment, seeking the issuance of a writ of garnishment directed to Stillpoint and indicating that the SEC believes that Stillpoint has possession, custody,

or control of property in which MIP Global has a substantial non-exempt interest.  See Docket # 70.

15.     On October 26, 2018, this Court issued the Writ of Garnishment directing Stillpoint to withhold and retain any property in its possession, custody or control in which MIP Global has a "substantial non-exempt interest at the time the Writ is served or in which [MIP Global] may obtain an interest in the future."  See Docket # 73.

16.     During the week of October 22, 2018, upon reviewing the Agreement, Hawthorne noticed certain scrivener's errors and alerted Weiss to them.  Hawthorne and Weiss, on behalf of himself and the entities named in the Agreement (including MIP Global), agreed to correct those errors in order to reflect the intent of the parties as of the time that the Agreement was executed.  Hawthorne Aff., ¶18.  On October 31, 2018, Hawthorne and the other parties to the Agreement executed an Acknowledgment and Agreement ("Acknowledgment") correcting the Agreement by interlineation.  Hawthorne Aff., ¶18, Exhibit D.

17.     Weiss informed Hawthorne that he had notified Stillpoint of the rights to payments from Stillpoint granted to Hawthorne and instructed Stillpoint that amounts payable to MIP Global should be paid directly to Hawthorne.  Hawthorne Aff., ¶19.  On October 31, 2018, Hawthorne, through counsel, also sent a letter by overnight mail to Stillpoint confirming Weiss' prior notification of the assignment and grant of security rights by MIP Global to Hawthorne.  Hawthorne Aff., ¶20, Exhibit E.

18.     On November 1, 2018, Hawthorne filed with the Delaware Secretary of State a UCC Financing Statement giving notice of her security interest in the proceeds, distributions and other payments due to MIP Global from Stillpoint.  Hawthorne Aff., ¶21, Exhibit F.

**Argument**

1. <u>Hawthorne is Entitled to Intervene on a Limited Basis as a Matter of Right</u>

Fed. R. Civ. P. 24(a) provides that on timely motion, the Court must permit anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Hawthorne's situation falls squarely within the standard of intervention as a matter right, and the Court should allow her to be heard concerning the Writ of Garnishment.

The Writ of Garnishment purports to encumber property in possession, custody or control of Stillpoint "in which MIP Global has an interest at the time this Writ is served or in which [MIP Global] may obtain an interest in the future." This desciption of the property appears to encompass proceeds, payments or distributions to be made by Stillpoint on account of MIP Global's membership interests in Stillpoint. As MIP Global assigned to Hawthorne its rights to any payments it may receive from Stillpoint more than two and a half years ago, Hawthorne has a clear and definite interest in the property encompassed by the Writ of Garnishment within the meaning of Fed. R. Civ. P. 24(a). Hawthorne's interests in the assigned rights are not and cannot be adequately represented by the existing parties here. As the Court's rulings in connection with the Writ of Garnishment may have the effect of dispossessing Hawthorne of a substantial property interest without the benefit of being heard, the Court should allow her to intervene in this action for a limited purpose of seeking to partially quash or modify the Writ of Garnishment to protect her rights. <u>See</u> <u>United States v. Duran</u>, 701 F.3d 912, 915 (11th Cir. 2012) (holding that 28 U.S.C. §3201 et seq. obliges a district court to determine ownerhip interests of any person who moves to dissolve or modify any writ in property); <u>see</u> <u>also</u> M.G.L. c. 246, § 33 (stating that

if a person claiming by assignment from the defendant goods, effects or credits in the hands of a trustee enters an appearance, he shall be admitted as a party in order to determine his title to such goods, effects or credits); Grise v. White, 351 Mass. 427, 431 (1966) (holding that the extent of assignees' rights had to be determined at the time when the trustee is to be charged or discharged).

> 2. The Writ of Garnishment Should be Quashed or Modified to Protect Hawthorne's Interests in Stillpoint

Hawthorne is entitled to the quashing or modification of the Writ of Garnishment for three reasons. First, the Federal Debt Collection Procedure Act 28 U.S.C. §3201 et seq., ("FDCPA"), pursuant to which the Writ of Garnishment was issued, does not apply to the disgorgement orders at issue here and cannot be used to satisfy MIP Global's obligations to the SEC. Second, MIP Global assigned the property rights encompassed by the Writ of Garnishment to Hawthorne more than two and a half years prior to the issuance of the Writ, and therefore does not possess the requisite substantial interests in the property for FDCPA to apply. Finally, even if FDCPA were to apply here, the Writ of Garnishment, which according to the docket has not yet been served on Stillpoint, is subordinate to Hawthorne's previously perfected security interest and as a result cannot interfere with Hawthorne's ability to foreclose on her collateral and collect payments on account of MIP Global's membership interest in Stillpoint.

> a. FDCPA Is Not Available to the SEC in this Case

As a threshold matter, the Writ of Garnishment should be quashed in its entirety because the SEC's Judgment against MIP Global for disgorgement – issued for the benefit of affected investors and not the U.S. Treasury – is outside the purview of the FDCPA. 28 USC § 3205 allows the issuance of a writ of garnishment exclusively to satisfy a claim for a "debt" which is defined by 28 USC § 3001 as "an amount that is owing to the Unites States" and for its benefit.

Accordingly, it is well established that FDCPA cannot be used as a vehicle for the government's collection efforts where the amount owing under a judgment constitutes disgorgement. See U.S. v. Badger, 818 F. 3d 563, 573-76 (10th Cir. 2016) (holding that FDCPA does not apply to a disgorgement order stemming from securities fraud); SEC v. AMX, International, Inc., 7 F.3d 71, 74-76 (5th Cir. 1993) (holding that a consent judgment for disgorgement of profits under federal securities laws is not subject to FDCPA). Indeed the FDCPA does not apply to any judgment where the U.S. government seeks restitution for the benefit of a private party except under the Mandatory Restitution to Victims Act, 18 USC § 3663A, applying to certain crimes. U.S. v. Bongiorno, 106 F. 3d 1027, 1036-1040 (1st Cir. 1997) (holding that the government's order for restitution in a civil case under the Child Support Recovery Act is not subject to collection under FDCPA because the judgment for child support arrearage issued for the benefit of a private party); U.S. v. Witham, 648 F.3d. 40, 47 (1st Cir. 2011) (holding that §3613(a) of the MVRA authorizes the use of the FDCPA to enforce victim restitution orders for listed crimes, but does not otherwise change the holding in U.S. v. Bongiorno).

The Judgment against MIP Global, on account of which the Writ of Garnishment was issued, is comprised solely of civil "disgorgement" damages and prejudgment interest thereon.[2] This alone disqualifies the SEC from relying on FDCPA for collection. Moreover, the Judgment provides that the payments collected by the SEC will inure to the benefit of private investors. Specifically, the Judgment expressly requires the SEC to propose to the Court a plan to distribute the collected funds to affected investors and allows it to petition the Court for transfer of the funds to the United States Treasury only in the event the SEC concludes that a distribution of the

---

[2] Unlike MIP Global which is liable solely for disgorgement and prejudgment interest thereon, the Judgment requires Defendants Weiss and Family Endowment to pay a civil penalty to the SEC in addition to disgorging profits gained as a result of the conduct alleged in the SEC's Complaint.

collected funds to affected investors would not be practicable and reasonable. See Docket # 55 at 9-10. In short, the disgorgement orders against MIP Global are not a "debt" under the FDCPA and cannot be collected through a writ of garnishment. C.f., U.S. v. Rostoff, F.39 63, 69-70 (1st Cir. 1999) (holding that FDCPA applied where, unlike here, proceeds of restitution will go directly into the coffers of a federal agency).

      b. MIP Global Lacks "Substantial Interest" in the
          Property Encumbered by the Writ of Garnishment

In addition to the FDCPA's general lack of application to the SEC's disgorgement judgment against MIP Global, the SEC is not entitled to garnish the net proceeds, distributions or other payments that may be due to MIP Global from Stillpoint because those rights were previously assigned to Hawthorne.

28 USC § 3205 permits the issuance of a writ of garnishment solely against property "in which the debtor has a *substantial nonexempt interest* (emphasis added)." The term "interest," which is not defined by 28 USC § 3205 and therefore must be construed according to its ordinary meaning (Harrington v. Chao, 372 F.3d 52, 59 (1st Cir. 2004)), is commonly understood to mean a "legal share in something" or "all or part of a legal or equitable claim to or right in property." See Black's Law Dictionary (10th ed. 2014). The Agreement assigned to Hawthorne all of MIP Global's rights to net proceeds, distributions and other payments on account of its interest in Stillpoint until Hawthorne receives payments in an aggregate sum equal to the Settlement Amount. Accordingly, the Agreement, which preceded the Judgment by more than two months and the Writ of Garnishment by more than two and a half years, divested MIP Global of the "substantial interest" required by the FDCPA in the payments assigned to Hawthorne. See Bank of Am., N.A. v. WRT Realty, L.P., 769 F. Supp. 2d 36, 39 (D. Mass. 2011) (stating that as an assignee, plaintiff stepped into the shoes of its assignor and enjoys only those rights the assignor

possessed); c.f. Metzger v. Culbert, 709 F.2d 32, (9th Cir. 1983) (District Court erred in awarding priority to the United States in connection with the sale of a seized fishing vessel where the debtor assigned title to the property to his lawyer in partial payment of legal fees before judgment and sentencing of the debtor).

As the Writ of Garnishment cannot attach property rights which MIP Global has alienated, the Court should quash/modify it to recognize Hawthorne's unconditional interest in the payments due from Stillpoint up to the Settlement Amount. See Rubin v. Islamic Republic of Iran, 810 F. Supp. 2d 402, 404 (D. Mass. 2011) (denying motion for trustee process attachments where plaintiffs have not shown that the "goods, effects, or credits" at issue were property of the defendant), aff'd on other grounds, 709 F.3d 49 (1st Cir. 2013).

    c. Hawthorne's Security Interests Have Priority Over the SEC's Rights under the Writ of Garnishment

The Writ of Garnishment should also be quashed because, even if the Writ of Garnishment was valid, Hawthorne's security interest in MIP Global's rights to payment from Stillpoint arose, attached, and were perfected prior to the attachment of any lien that could attach for the benefit of the SEC. See M.G.L. c. 106, § 9-317 (stating that a security interest is subordinate to the rights of a lien creditor before the security interest is perfected). 28 USC § 3205 does not expressly provide for a lien on the debtor's property, nor does it elevate the interests of the garnishor over another party's previously perfected and unconditional security interests in the same property. The SEC has not sought or obtained a writ of execution against any of the Defendants at any point. See 28 U.S.C. §3203 ("[a] lien shall be created in favor of the United States on all property levied under a writ of execution.") Moreover, the docket does not include a notice of service of the Writ of Garnishment upon Stillpoint or MIP Global. See 28 U.S.C. §3205(c)(3) ([t]he United States shall serve the garnishee and the judgment debtor with a

copy of the writ of garnishment and shall certify to the court that this service was made."). Accordingly, the SEC does not have a judicial lien on any of MIP Global's assets, much less a lien that arose prior to Hawthorne's the security interest.  See Creed v. Gilman, 48 N.E. 778, 778 (1897) ("[t]he issuing of a writ does not create [the attachment]. Something more is necessary; and that ... is the arresting of the debt in the hands of the trustee, which is effected by a service of the writ on him."); deBenedictis v. Dougherty, No. 14-12139, 2015 WL 448074, * 2 (D. Mass. July 22, 2015) (stating that under Massachusetts law, property to be attached remains unencumbered until service of the attachment is made).

As Hawthorne's security interest arose more than two and a half years prior to the issuance of the Writ of Attachment and was perfected prior to the Court's issuance of a disposition order (or even the SEC's service of the Writ of Garnishment on Stillpoint), the Writ of Attachment should be quashed or modified to require both the SEC to recognize Hawthorne's priority rights to receive any payments that would otherwise be payable to MIP Global by Stillpoint.

## Conclusion

For the reasons stated above, Hawthorne requests that the Court (1) allow her to intervene in this action for a limited purpose of moving to quash or modify the Writ of Attachment, (2) quash the Writ of Attachment as improper under the FDCPA, or (3) quash or modify the Writ of Attachment to recognize the assignment of MIP Global's interests to Hawthorne and require both the SEC and Stillpoint to recognize Hawthorne's priority rights to receive any payments that would otherwise be payable to MIP Global in connection with MIP Global's interest in Stillpoint until Hawthorne receives payments in the aggregate amount equal to the Settlement Amount.

## REQUEST FOR A HEARING

Hawthorne hereby requests a hearing on the foregoing Motion.

                               Respectfully submitted,

                               JENNIFER H. HAWTHORNE

                               By her attorneys,

                               /s/ Mariana Korsunsky
                               Martin M. Fantozzi (BBO #554651)
                               Richard J. Rosensweig (BBO #639547)
                               Mariana Korsunsky (BBO #675626)
                               Goulston & Storrs PC
                               400 Atlantic Avenue
                               Boston, MA  02110-3333
                               (617) 482-1776
                               mfantozzi@goulstonstorrs.com
                               rrosensweig@gousltonstorrs.com
                               mkorsunsky@goulstonstorrs.com

Dated:  November 5, 2018

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic filing (NEF). On November 5, 2018 a paper copy will be sent by the United States Postal Service, first-class mail delivery, to the following parties who are not registered with CM/ECF:

| | |
|---|---|
| Mr. Lee D. Weiss | Stillpoint Capital LLC |
| 15 Westbourne Road | Attn: Amy C. Cross |
| Newton Center, MA  02459 | 13301 W. Hillsborough Ave. |
| | Suite 101 |
| | Tampa, FL  33635 |

      Additionally, promptly after filing through CM/ECF, an electronic courtesy copy of the foregoing will be sent to defendant Weiss at lweiss@familyendowment.com.

                               /s/   Mariana Korsunsky
                               Mariana Korsunsky

4831-6186-4057.3